**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **ELIZABETH BOLGER, et al.,** |
| **Plaintiffs,** |
| v. |
| **DISTRICT OF COLUMBIA, et al.,** |
| **Defendants.** |

**Civil Action No.  03-0906 (JDB)**

## ORDER

On March 17, 2008, the Court granted in part and denied in part plaintiffs' motion for sanctions and related relief for discovery abuse perpetrated by the District of Columbia (the "District") in this case.  See Bolger v. Dist. of Columbia, 248 F.R.D. 339 (D.D.C. 2008).  The Court granted plaintiffs relief in the form of attorney's fees and costs and required plaintiffs to submit a detailed explanation of the amounts they were requesting.  Plaintiffs have now moved for an award of $161,780.80 in fees and $1,171.49 in costs related to the discovery violations found by the Court.[1]  The District, however, argues that plaintiffs should be awarded no more than a total of $56,261.60.  Although the Court agrees that some reduction in the amount requested by plaintiffs is appropriate, the Court does not agree with all of the District's objections.

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying

---

[1]Following the submission of the District's partial opposition plaintiffs withdrew entries 157-159, 214, 219-226, 243, 246-247, 254, 268, 271, and 278, to reduce their fee request by $1,232.20.  See Pls.' Reply at 35.

1

the number of hours reasonably expended on the litigation times a reasonable hourly rate." <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984). The fee applicant bears the burden of documenting the number of hours reasonably expended and justifying the reasonableness of the hourly rate. <u>Covington v. Dist. of Columbia</u>, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Once the applicant provides evidence supporting the requested rate, the burden shifts to the opposing party to establish that the rate is erroneous by way of "equally specific countervailing evidence." <u>Id.</u> at 1109. The Court and parties must keep in mind, however, that a "'request for attorney's fees should not result in a second major litigation.'" <u>Id.</u> at 1107 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983)). And the Court must ensure that the sanctions prescribed are just and proportionate to the offense. <u>See</u> <u>Bonds v. Dist. of Columbia</u>, 93 F.3d 801, 808 (D.C. Cir. 1996).

Plaintiffs argue that they have endeavored to submit only fees and costs for "legal services that were incurred either exclusively or predominantly because of the District's discovery failures and the need for persistent expenditure of time and resources to extract from the District that which should have been produced as a matter of course, as well as to establish the destruction of important matter such as the radio runs or recorded police communications." Pls.' Expl. of Att'y Fees and Costs at 11. In response, the District contends that the Court "awarded Plaintiffs fees and costs only for 'discovery efforts to obtain the running resume,'" and that plaintiffs' request is therefore broader than the Court's award. Def.'s Partial Opp'n at 4. The District accordingly asks the Court to strike entries 1-159 of plaintiffs' 327 itemization of fees.

Although the District's sanctions briefing was primarily focused on the belated disclosure of the running resume, the Court's previous memorandum opinion and order plainly were not limited to that offense. The Court found that the "record here clearly demonstrates that the

District violated orders of this Court in failing to produce responsive documents in a timely manner." Bolger, 248 F.R.D. at 347. As just a few examples, the Court identified the belated disclosure of the running resume, the belated disclosure of individuals who were on the scene in April 2002, and the belated disclosure of Officer Jeffrey Cadle's handwritten notes of plaintiffs' arrest. Id. at 342. Therefore, the District's sanctionable conduct runs far deeper than the failure to produce the running resume in a timely fashion.[2]

The District is correct, however, that the Court did not reach a conclusion on the merits of plaintiffs' request for sanctions regarding the recorded police channel communications. Because their destruction was confirmed months after the briefing for plaintiffs' motion for sanctions was completed, the Court sought supplemental filings from the parties to clarify this request. Bolger, 248 F.R.D. at 346 n.2. After carefully reviewing the parties' supplemental filings, the Court now finds that the destruction of these recordings is sanctionable discovery misconduct. "[T]he District acknowledges that it had an obligation to preserve the applicable police channel recordings from the time frame of the incident, and that it failed in this obligation." Def.'s Resp. to Pls.' Updated Req. for Sanctions at 4. Moreover, "[t]his destruction occurred years after the first discovery requests and months after Office of the Attorney General (OAG) counsel Thomas Koger certified the District's discovery response inaccurately representing . . . that the District 'has no radio runs recorded during or related to the protests of April 20, 2002 and the arrest of

---

[2]Even if the Court's award had been limited to the running resume, the District's request categorically to exclude entries 1-159 would still be unreasonable. Entry 160 occurs in March 2007 -- the very month the District finally produced the running resume. The District would therefore deny plaintiffs any recovery for their persistent efforts to obtain the running resume prior to that point in time, even though Sergeant Douglas Jones testified that he had forwarded the running resume to his superiors thirteen months earlier. See Pls.' Reply to Mot. for Sanctions Ex. 10.

plaintiffs.'"  Pls.' Updated Req. for Sanctions at 1 (quoting Def.'s Resps. to Pls.' Sec. Req. for

Prod. of Docs., dated May 2, 2005).  The Court therefore concludes that the attorney's fees and

costs for the District's discovery violations should encompass plaintiffs' efforts to locate and

disgorge the police channel communications.[3]

   However, based on the District's remaining objections, the Court will make the following

appropriate reductions and modifications to plaintiffs' request for fees and costs as itemized

below.

   1.  The District argues that several status conferences with the Court addressed matters

other than the District's discovery violations and that plaintiffs have failed to properly prorate

these entries.  Specifically, the District argues that the Sept. 12, 2006 status hearing "principally

involved a discussion about the number of remaining depositions and the nature of additional

discovery to be conducted" (Entries 147-153); that the April 13, 2007 status hearing involved

"the FBI's need for an additional search to confirm the FBI possessed no relevant records"

(Entries 203-213); and that the May 22, 2007 status hearing involved plaintiffs' "intent to take

depositions of FBI agents and request for further briefing on FBI's pending dispositive motion"

(Entries 261-266).  Def.'s Partial Opp'n at 6-7 n.3.  Because these status hearings included routine

scheduling, discovery involving the federal defendant, and matters not solely related to the

District's discovery violations, the Court will reduce Carl Messineo's time by four hours, Mara

Verheyden-Hilliard's time by two hours, and Crystal Kim's time by two hours.  See Tequila

Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 248 F.R.D. 64, 69-70 (D.D.C. 2008) (reducing

---

   [3]The Court will reserve ruling on plaintiffs' request for an adverse inference instruction
for the destruction of the recorded police channel communications.

plaintiff's sanction award by the number of hours spent on ordinary litigation activities that were unrelated to plaintiff's motion to compel).

2.      According to plaintiffs' itemization, plaintiffs spent 61.6 hours preparing their reply in support of their motion for sanctions.  Although the Court is cognizant of the effort exerted in carefully crafting the reply, the Court agrees with the District that the total number of hours asserted by plaintiffs' lead attorneys is excessive.  Additionally, many hours were directed to reviewing discovery materials and correspondence from other litigation -- a task more appropriate for a junior associate or paralegal.  The Court will therefore reduce Carl Messineo's time by seventeen hours and Mara Verheyden-Hilliard's time by three hours for entries 234, 236-239, 242, 245, 253, 256, 258, and 259.

3.      An across-the-board percentage reduction is justified when a court determines that the total claim is unreasonable.  See Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, 12 F.3d 269, 272 (D.C. Cir. 1994); Ctr. for Biological Diversity v. Norton, 2005 WL 6127286, at *2 (D.D.C. Jan. 26, 2005).  Here, the District raises numerous objections to the reasonableness of plaintiffs' request.  The District argues that plaintiffs' attorneys engaged in excessive conferencing and failed to exercise billing judgment in the submission of their itemization, and the District contends that plaintiffs' itemization contains a number of entries that demonstrate that multiple attorneys performed the same work in a duplicative manner.  See Doe v. Rumsfeld, 501 F. Supp. 2d 186, 192 (D.D.C. 2007) ("[D]uplication of effort is another basis on which fee requests can be deemed excessive.").  Moreover, the District objects to the lack of specificity in several billing entries and argues that plaintiffs seek to recover at attorney rates for paralegal work and at paralegal rates for non-compensable secretarial work.  Because the Court

has serious concerns about such inefficiencies, the Court will apply a 15% across-the-board reduction in the fee award.

    4.    Lastly, courts have discretion in choosing what set of hourly rates to apply in awarding attorney's fees.  See Covington, 57 F.3d at 1110 ("[D]istrict courts act with a real measure of discretion in granting a fee award . . . .").  Plaintiffs argue that the Court should apply the CPI-Legal Services Laffey Matrix -- a Laffey Matrix updated annually by the change in the nationwide legal services component of the Consumer Price Index.  The District, on the other hand, argues that the Court should apply the U.S. Attorney's Office Laffey Matrix, which is updated annually by the change in the District of Columbia component of the Consumer Price Index.  Both matrices have been applied by judges in this district, although the U.S. Attorney's Office Laffey matrix is used more frequently.  See Interfaith Comty. Org. v. Honeywell Int'l, 426 F.3d 694, 709 (3d Cir. 2005) (explaining that there are "few decisions approving the use of [the CPI-Legal Services Laffey matrix] approach . . . [while] numerous courts in the District of Columbia have upheld the U.S. Attorney's Matrix as a reasonable measure of billing rates"); see also Hansson v. Norton, 411 F.3d 231, 236 (D.C. Cir. 2005) ("[Appellant] acknowledges that the 'reasonable hourly rate' is guided by the Laffey matrix prepared by the U.S. Attorney's Office."); Am. Lands Alliance v. Norton, 525 F. Supp. 2d 135, 149 (D.D.C. 2007) (citing "to numerous cases in which members of this Court have endorsed the standard Laffey Matrix").

    In ruling on an earlier fee submission in this case, the Court applied the U.S. Attorney's Office Laffey Matrix fully aware of co-lead counsel Carl Messineo and Mara Verheyden-Hilliard's substantial experience and solid reputation litigating complex cases in federal court. The Court now similarly finds that the U.S. Attorney's Office Laffey Matrix is appropriate for

plaintiffs' instant motion.  Although the Court makes no determination as to whether plaintiffs

may be entitled to the enhanced rates of the CPI-Legal Services <u>Laffey</u> Matrix if they ultimately

prevail in this matter, plaintiffs have failed to demonstrate that enhanced rates are justified for an

award related to the District's discovery violations.  Hence, the hourly rates within plaintiffs' fee

submission will be adjusted appropriately before applying the reduction discussed above.[4]

Accordingly, based on the entire record, it is hereby

**ORDERED** that plaintiffs are awarded $91,207.74 in attorney's fees and costs related to

the District's sanctionable discovery violations.  The award consists of 187.3 hours for Carl

Messineo at $390/hour, 66.2 hours for Mara Verheyden-Hilliard at $390/hour, 49.6 hours for

Crystal Kim at $125/hour, and 4 hours for Radhika Miller at $215/hour, reduced by fifteen

percent as described above, plus costs of $1,171.49.

**SO ORDERED**.

_____/s/_____
JOHN D. BATES
United States District Judge


Dated: <u>August 20, 2008</u>

---

[4]Because plaintiffs do not provide the Court with a breakdown reflecting the total number of hours expended by each attorney and paralegal, the Court cannot easily apply the U.S. Attorney's Office <u>Laffey</u> Matrix to plaintiffs' fee submission.  The District does provide a breakdown of plaintiffs' request as to each attorney and paralegal, <u>see</u> Def.'s Partial Opp'n at 29, but that breakdown is four hours short of plaintiffs' grand total.  Nevertheless, because plaintiffs failed to correct the District's numbers in their reply and because plaintiffs have provided no other alternative for the Court, the Court will use the District's breakdown as the basis for the relevant calculations.